IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02950-KLM

OWNERS INSURANCE COMPANY,

      Plaintiff,

v.

JOHN A. KEETON, individually;
DAVISON M. BOWMAN, individually; and
MARGARET M. WALLACE, individually,

      Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant John A. Keeton's **Renewed Motion to Dismiss or to Stay Declaratory Action** [#43][1] (the "Motion"). Defendant Keeton seeks to dismiss this Declaratory Judgment Action ("DJA") without prejudice or stay it pending (1) final resolution of any claims that may be filed against him by Defendants Bowman or Wallace, or (2) the running of the statute of limitations as to such claims. *Id.* at 2-3. Defendant Keeton asserts that the DJA is premature or that he would be unfairly prejudiced if it goes forward before any claims by Bowman and Wallace are resolved. *Id.*

---

[1] "[#43]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

The Court has reviewed the Motion [#54], the Response [#52], the Reply [#52], the case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#43] is **DENIED**.

## I.  Background

**A.     Insurance Policies**

Owners Insurance Company. ("Plaintiff") is a Michigan corporation licensed to issue insurance policies in Colorado.  *Compl.* [#1] at 1.  Defendant Keeton is a Colorado resident.  *Id.*  Plaintiff issued policy numbers 44-459-998-00 (the "Auto Policy") and 46-428-911-01 (the "Umbrella Policy," collectively with the Auto Policy, the "Policies") to Keeton with effective dates of May 20, 2020, through November 20, 2020, and November 29, 2019, through November 29, 2020, respectively.  *Id.* at 2.  Both Policies covered Keeton's 2017 Ford Escape Titanium (the "Vehicle").  *Id.*

The Auto Policy provided liability coverage for "damages for bodily injury . . . for which [the insured] become[s] legally responsibly because of or arising out of the ownership, maintenance or use of [the insured's] automobile," but did not apply "to any person for bodily injury . . . arising out of or resulting from an intentional act of that person." *Compl.* [#1] at 2 (quoting *Auto Policy* [#1-1] at 19-20).  The Auto Policy also provided collision coverage for "direct physical damage to [the insured's] automobile and its equipment caused by accidental collision with another object or by accidental upset," but did not apply to "loss of or damage to [the insured's] automobile because of or arising out of [the insured's] intentional act or an intentional act committed at [the insured's] direction or with [the insured's] knowledge."  *Compl.* [#1] at 2 (quoting *Auto Policy* [#1-1] at 33-34, 35-37).  In addition, the Umbrella Policy provided personal liability coverage and included

- 2 -

the following language: "We will pay on behalf of the insured the ultimate net loss in excess of the retained limit which the insured becomes legally obligated to pay as damages because of personal injury or property damage which occurs anywhere in the world."  *Compl.* [#1] at 3 (quoting *Umbrella Policy* [#1-2] at 12).

**B.    The Incident**

According to the Complaint [#1], on June 26, 2020, Defendant Keeton and three other individuals were socializing and drinking alcohol at Wicked Tequila Room in Downtown Loveland (the "Incident").  *Compl.* [#1] at 6.  One of the individuals in the group was Defendant Bowman.  Prior to the Incident, Defendant Keeton maintained a romantic relationship with Defendant Bowman; at the time of the Incident, however, Defendant Bowman had become romantically involved with another individual in the drinking group. *Id.*

The Complaint [#1] alleges that, at some point during the evening, "an argument occurred between [Defendant] Keeton and [Defendant] Bowman, which led to [Defendant] Keeton striking [Defendant] Bowman in the chest."  *Compl.* [#1] at 6.   Thereafter, Defendant Bowman and the rest of the drinking group left Defendant Keeton at Wicked Tequila Room.  *Id.*  Defendant Keeton then "entered his [Vehicle], sat in the driver's seat, started the engine, and drove the Vehicle onto the public roadway." *Id.* at 7.

Plaintiff alleges that when Defendant Keeton entered the roadway, (1) "he was under the influence of alcohol[;]" (2) "his blood alcohol content was in excess of .10[;]" (3) "his driving skills were impaired[;]" (4) "he was emotional [sic] agitated[;]" and (5) "he should not have been driving."   *Compl.* [#1] at 7.  Plaintiff also alleges that "[Defendant] Keeton "intentionally hit [Defendant] Bowman with the Vehicle," and that "[w]itnesses to

the Incident confirmed that a blue Ford SUV accelerated and swerved into [Defendant] Bowman" and another individual.  *Id.* at 8.  Following the Incident, Defendant Keeton drove to his home, located approximately seven minutes from Wicked Tequila Room.  *Id.* at 9.

**C.     Proceedings Subsequent to the Incident**

Following the Incident, Defendant Keeton was charged with multiple felonies and a misdemeanor.  *See Compl.* [#1] at 10.  On July 1, 2020, Defendant Keeton tendered an insurance claim to Plaintiff relating to the Incident, and, on July 27, 2020, Plaintiff "mistakenly and erroneously issued payment in the amount of $2,970.65."  *Compl.* [#1] at 3.  Later, however, upon realizing its error, Plaintiff issued a letter to Defendant Keeton requesting that he return the $2,970.65 because it had been issued by mistake.  *Id.*; *see also Letter* [#1-3].  Plaintiff stated::

> This letter is putting [Defendant Keeton] on notice that [Plaintiff is] reserving [its] rights to disclaim at a later date, any obligation of Owners Insurance Company under the policy identified above, and to assert the defense of non-coverage, file a declaratory action, intervene in a law suit if filed and withdraw our defense under the policy if assigned.

*Letter* [#1-3] at 1.  On August 13, 2020, Keeton issued correspondence to Plaintiff conveying his refusal to return the erroneous payment.  *Compl.* [#1] at 11.

On September 30, 2020, Plaintiff filed a Complaint for Declaratory Action [#1] "seek[ing] a judicial declaration as to whether it has a duty to indemnify Defendant Keeton . . . ."  *Compl.* [#1] at 5.  Essentially, Plaintiff relies on the text of its Policies to support its position that coverage, and, subsequently, a duty to defend, do not exist.   More specifically, Plaintiff argues:

- 4 -

a. The Incident was not caused by an "accidental collision" as required by the Policies.

b. [Defendant] Keeton expected and/or intended to cause bodily injury to [Defendant] Bowman and [another individual] when [Defendant] Keeton intentionally struck [Defendant] Bowman and [another individual] with the Vehicle.

c. [Defendant] Keeton was not so intoxicated that he lacked the capacity to form the intent to cause bodily injury to [Defendant Bowman] and [another individual].

d. [Plaintiff] did not waive its right to disclaim coverage under the applicable policy exclusions when it erroneously issued payment to [Defendant] Keeton for damage sustained to the Vehicle and is entitled to a return of the mistaken payment.

e. In the event that [Defendant] Bowman and/or [another individual] alleges claims for punitive damages against [Defendant] Keeton, [Plaintiff] has no duty to defend or indemnify [Defendant] Keeton against those claims.

f. [Defendant] Bowman and [the other injured individual] are bound to the adjudication of this action.

g. If litigation brought by [Defendant] Bowman and/or [the other injured individual] against [Defendant Keeton] were to occur, [Plaintiff] seeks a judicial declaration that it has no duty to defend [Defendant] Keeton.

*Compl.* [#1] at 12.

In response to the Complaint [#1], Defendant Keeton filed his initial Motion to Dismiss or to Stay Declaratory Action [#17] ("Initial Motion"). By Minute Order [#40] of March 16, 2021, the Court granted in part and denied in part that Motion [#17], denying the request for dismissal but granting a stay. Specifically, the Court ordered that "[a]ll proceedings . . . are **stayed** pending resolution of Mr. Keeton's criminal case," and that "Mr. Keeton's counsel shall file a status report every sixty (60) days regarding the status of the criminal case, until such time as it is completed." *Id.* (emphasis in original).

On April 29, 2021, Defendant Keeton filed a Status Report [#42] indicating that, in exchange for two guilty pleas,[2] all remaining criminal charges against him were dismissed.  *Id.* at 2.  Because it was undisputed that Defendant Keeton's criminal case had resolved, the Court lifted the stay.  *See Minute Order* [#57] at 2.  The Court indicated, however, that it would separately consider Defendant Keeton's arguments in support of dismissal or stay, *id.*, which it now proceeds to do.

## II.  Analysis

### A.   Whether the Case Should Be Dismissed

#### 1.    What Law Applies

In both his Initial Motion [#17], incorporated into the Motion [#43] at issue, and the Renewed Motion [#43], Defendant Keeton relies on two primary theories to argue that Plaintiff's Complaint [#1] should be dismissed without prejudice: first, that Plaintiff's declaratory judgment action ("DJA") is anticipatory and premature under Colorado law; and, second, that without a stay, he will be unfairly prejudiced if subsequent litigation arises.  The Court considers each of these arguments in turn, but, as a preliminary matter, first clarifies the roles that federal and Colorado law play in adjudicating the controversy.

The Court rejects Defendant Keeton's argument that Colorado law controls its declaratory judgement analysis.  *See Initial Mot.* [#17] at 3-5, 6-7 (relying almost

---

[2]  Defendant Keeton pled guilty to one count of violating C.R.S. § 18-2-205, vehicular assault while under the influence of alcohol, a class 4 felony, and one count of violating C.R.S. § 42-4-1601(2)(b), Accidents Involving Death or Personal Injuries – Duties (leaving the scene of the accident involving serious bodily injury, a class 4 felony.  Keeton was sentenced to 5 years of imprisonment and ordered to pay restitution.

exclusively on Colorado case law and arguing that it controls the Court's analysis); *Reply to Initial Mot* [#24] at 1-3 (titling subsection "The Law in *Constitution Associates v. New Hampshire Ins.* is Binding") (emphasis omitted).

"It is well recognized that the [Declaratory Judgment] Act involves procedural remedies and not substantive rights." *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978); *see also Addison Ins. Co. v. Rippy*, No. 08-cv-00237-PAB-MJW, 2009 WL 723322, at *3 (D. Colo. Mar. 18, 2009) (citing *Jones* and rejecting argument that "a federal court sitting in diversity jurisdiction must decide whether to stay a declaratory action pursuant to the strictures of state law rather than federal law").  Thus, "[b]ecause declaratory judgment acts are procedural rules, 'federal law determines whether a district court may properly enter a declaratory judgment' in a diversity case." *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1194 (D. Colo. 2018) (quoting *Addison Ins. Co. v. Maynard*, No. 08-cv-00054-WDM-BNB, 2008 WL 2079143, at *2 (D. Colo. May 15, 2008)).

In *Constitution Associates v. New Hampshire Ins. Co.*, 930 P.2d 556 (Colo. 1996), the Colorado Supreme Court reviewed two actions for declaratory relief brought by insurance companies.  *See Connecticut Gen. Life Ins. Co. v. A.A.A. Waterproofing, Inc.*, 911 P.2d 684 (Colo. App. 1995); *New Hampshire Ins. Co. v. Constitution Assocs.*, 908 P.2d 1163 (Colo. App. 1995).  Both actions sought clarification as to obligations owed to an insured in an underlying lawsuit, but, critically, both actions were brought and reviewed pursuant to Colorado's Uniform Declaratory Judgment Act, Colo. Rev. Stat. § 13-51-101, *et seq.   Constitution Assocs.*, 930 P.2d at 560-61.  In the present case, however, Plaintiff filed its Complaint [#1] under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

*Compl.* [#1] at 1.  Accordingly, the Court's declaratory judgment analysis, and whether the Court should hear the dispute, is governed by federal authority; specifically, the five factors articulated in *State Farm & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) and discussed in Section II.A.2, *infra.. See, e.g., Allied World Surplus Lines Ins. Co. v. Quik Travel Staffing, Inc.*, No. 20-cv-00972-LTB, 2020 WL 9259323, at *2 (D. Colo. Oct. 13, 2020).[3]

### 2.    Analysis of the Relevant Factors

Under 28 U.S.C. § 2201, the Declaratory Judgment Act (the "Act") provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  "[T]he question of whether this power should be exercised in a particular case is vested in the sound discretion of the district courts."  *TBL Collectibles*, 285 F. Supp. 3d at 1194 (internal quotation marks omitted) (quoting *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995)).  Such discretion is circumscribed by the text of the Act itself, as well as several discretionary factors (the "*Mhoon* factors" or "discretionary factors") discussed below.

### a.    Actual Controversy

First, the Court must determine that an "actual controversy" exists as set forth by statute.  *See* 28 U.S.C. § 2201; *Rippy*, 2009 WL 723322, at *3 (citing *Surefoot LC v. Sure*

---

[3] Nevertheless, the Court acknowledges that the framework from *Constitution Associates* may provide some guidance in its analysis.  *See id.*

*Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) ("The preceding language of the Declaratory Judgment Act creates two separate hurdles that parties seeking a declaratory judgment must overcome.  First, there must be an 'actual controversy' at issue.").

As Plaintiff notes, although Defendant Keeton's Initial Motion [#17] and Reply [#24] repeatedly argue that Plaintiff's declaratory judgment action is anticipatory and premature, Keeton never argues that "the controversy between himself and [Plaintiff] either does not exist or has been resolved."  *See Resp. to Initial Mot.* [#22] at 6.  Further, Plaintiff argues that the adjudication of the present declaratory judgment action "will serve the laudatory purpose of clarifying and settling the question of whether [Plaintiff] has a duty to defend and indemnify [Defendant] Keeton," and will save Plaintiff "untold amounts of money" in monitoring whether it owes Defendant Keeton coverage with regards to future litigation.  *Id.* at 7.  This suggests that the legal interests between Plaintiff and Defendant are adverse.  Accordingly, the Court finds that an actual controversy exists.

### b.    Discretionary *Mhoon* Factors

Next, the Court applies the discretionary factors articulated in *Mhoon*, 31 F.3d 979. There, the Tenth Circuit identified five factors that a district court should consider when determining whether to exercise its discretion to hear a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*TBL Collectibles*, 285 F. Supp. 3d at 1194-95 (quoting *Mhoon*, 31 F.3d at 983).  The Court considers each *Mhoon* factor in turn.

> **i.    Whether the Declaratory Action Settles the Controversy**

First, the Court considers whether hearing Plaintiff's Complaint for Declaratory Relief [#1] "would settle the controversy" between the parties.  *Mhoon*, 31 F.3d at 983. As noted above, Plaintiff argues that adjudicating the declaratory judgment action "will serve the laudatory purpose of clarifying and settling the question of whether [Plaintiff] has a duty to defend and indemnify [Defendant] Keeton."  *Resp. to Initial Mot.* [#22] at 7. In other words, Plaintiff argues that resolution of the present action "will fully and finally resolve any uncertainty with regard to insurance coverage . . . ."  *Id.*

On the other hand, Defendant Keeton argues that "Plaintiff's action is premature because . . . it is impossible to determine whether or not [Plaintiff] has a duty to defend." *Reply to Initial Mot.* [#24] at 3.  Such a duty "depends upon whether or not the injured parties file suit," and "[a]s none of the injured parties have yet filed suit, neither the Plaintiff, Defendant Keeton, nor this court can predict what theories they will allege."  *Id.* at 3, 4.  "Therefore," argues Defendant Keeton, "because the duty to defend issue is not ripe, the Plaintiff's declaratory action can not [sic] result in finality as required by the test set out in *Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.*[,]" 685 F.3d 977 (10th Cir. 2012).[4]  *Id.* at 4 (citation omitted).

---

[4]  The portion of the *Deer Creek* case cited by Defendant Keeton quotes the Tenth Circuit's articulation of the five discretionary *Mhoon* factors.  *See id.* at 980-81 (quoting *Mhoon*, 31 F.3d at 983).  Accordingly, the Court reads Defendant Keeton's argument concerning "finality" as referring

The Court rejects Defendant Keeton's argument.  While the absence of underlying litigation may present a ripeness issue under some circumstances, the Declaratory Judgment Act provides district courts with discretion to "declare the rights and other legal relations of *any* interested party seeking such declaration, *whether or not further relief is or could be sought*."  28 U.S.C. § 2201 (emphases added).  Thus, assuming *arguendo* that a party injured by the Incident will file suit against Defendant Keeton in the future, the adjudication of this declaratory judgment action would settle the controversy as it pertains to Plaintiff's duty to defend that suit.

Accordingly, the Court finds that the first *Mhoon* factor weighs in favor of exercising discretion to hear Plaintiff's Complaint for Declaratory Relief [#1].

### ii.   Whether the Declaratory Action Clarifies Legal Relations at Issue

Second, the Court considers whether hearing Plaintiff's Complaint for Declaratory Relief [#1] "would serve a useful purpose in clarifying the legal relations at issue. . . ." *Mhoon*, 31 F.3d at 983.  The crux of the dispute between the parties is whether Defendant's Keeton's insurance coverage imposes a duty on Plaintiff to defend and indemnify.  Such a dispute deals squarely with legal relations, and the Court's adjudication will necessarily clarify the obligations owed by Plaintiff.  *See Mhoon*, 31 F.3d at 984 (citing *Metro. Prop. & Liab. Ins. Co. v. Kirkwood*, 729 F.2d 61 (1st Cir. 1984)) ("[T]here is a substantial interest in deciding these issues without undue delay, particularly

---

to *Mhoon*'s first discretionary factor, "whether a declaratory action would settle the controversy . . . ."  *Mhoon*, 31 F.3d at 983.

- 11 -

the question of the duty to defend."); *Rippy*, 2009 WL 723322, at *5 (finding second *Mhoon* factor weighs in favor of exercising discretion "because determining the duties of insurers represents an intended and important application of the Declaratory Judgment Act").

Accordingly, the Court finds that the second *Mhoon* factor weighs in favor of exercising discretion to hear Plaintiff's Complaint for Declaratory Relief [#1].

### iii.    Procedural Fencing/Res Judicata

Neither party has addressed the third *Mhoon f*actor, whether the declaratory action is being used for procedural fencing or to provide an arena for a race to res judicata.  As such, the Court has no basis to determine whether this factor weighs in favor of exercising discretion to hear the Complaint.

### iv.    Friction Between Federal and State Courts

Fourth, the Court considers whether hearing Plaintiff's Complaint for Declaratory Relief [#1] "would increase friction between our federal and state courts and improperly encroach upon state jurisdiction."  *Mhoon*, 31 F.3d at 983.  While there were state criminal proceedings pending against Defendant Keeton when his Initial Motion [#17] was filed, those charges have been resolved.  *See Status Report* [#42] at 2; *Minute Order* [#57].  In addition, the Court has not been advised of any civil actions in state court against Defendant Keeton.  Thus, the Court cannot find any friction between state and federal courts, or that the State of Colorado's jurisdiction would be encroached if the Court heard the DJA.  *See Rippy*, 2009 WL 723322, at *5-6 (citing *Mhoon*, 31 F.3d at 984) ("The limitation that the fourth *Mhoon* factor places on the federal inquiry is that the federal action may not unduly interfere with the underlying state court action.").

Accordingly, the Court finds that the fourth *Mhoon* factor weighs in favor of exercising discretion to hear Plaintiff's Complaint for Declaratory Relief [#1].

### v.   Whether There is an Alternative Remedy Which is Better or More Effective

Like the third *Mhoon* factor, neither party addresses whether there is an alternative remedy which may be better or more effective than exercising discretion to hear Plaintiff's declaratory judgment action.   Thus, the Court has no basis to determine whether this factor weighs in favor of exercising discretion to hear the Complaint.

### c.   Conclusion as to the Relevant Factors

Because there is an actual controversy and the *Mhoon* factors that are addressed by the parties weigh in favor of exercising discretion to hear Plaintiff's Complaint [#1], the Court finds that the DJA is proper at this juncture and should be heard by the Court. Accordingly, Defendant Keeton's Motion [#43] is **denied** to the extent it seeks dismissal of the DJA.

## B.   Whether the Case Should Again Be Stayed

The Court now turns to Defendant Keeton's alternative request for a stay.   Even though the stay in this case was just lifted (Minute Order [#57], the Court stated that it would separately consider Defendant Keeton's request in his Motion [#43] that the case continue to be stayed.   *Id.*

Like the Court's declaratory judgment analysis, federal law controls the Court's stay inquiry.   *See String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006).   When presented with a request for a stay, a court considers five factors: "(1) plaintiff's interests in proceeding

expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience of the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Id*. The Court also notes that where the underlying actions against a party seeking a stay are criminal in nature, a court's analysis should be guided by the factors set forth in *Auto-Owners Ins. Co. v. Next Generation Energy, LLC*, No. 14-cv-01580-REB-KLM, 2014 WL 7251678, at *2 (D. Colo. Dec. 19, 2014) (citations omitted) (brackets in original):

Although Defendant Keeton requests a stay, his Moton [#43] fails to articulate why, pursuant to the factors from *String Cheese* or *Auto-Owners*, a stay is appropriate. Similarly, Defendant Keeton's Initial Motion [#17] and Reply [#24] also failed to argue why the Court should grant a stay pursuant to the appropriate factors. *See Initial Mot.* [#17] at 5 (citing *String Cheese* for the sole proposition that "Rule 26(c) . . . permit[s] the court to make any order which justice requires to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense"); *Reply to Initial Mot.*[#24] at 5 (without elaboration, citing *String Cheese* and arguing that "instead of staying these proceedings, and considering the five factors in the *String Cheese Incident, LLC* case, Defendant Keeton submits the court should exercise its discretion and dismiss the Plaintiff's Complaint [#1] without prejudice"). Due to the then-pending criminal proceedings against Defendant Keeton, however, the Court found that a stay was appropriate. *See Minute Order* [#40].

In the instant Motion [#43], Defendant Keeton argues that unless the Court enters a stay, the parties will be forced to inquire into his culpability at the time of the Incident. Because such an inquiry could reveal a less-than-intentional mental state, and thereby

bring his conduct outside the scope of his Auto Policies and Plaintiff's duty to defend, Defendant Keeton argues that the case must be stayed to prevent unfair prejudice. *Id.* at 3. Further, Defendant Keeton argues that because he only pled guilty to vehicular assault and leaving the scene of an accident—two strict liability crimes—his mental culpability remains questionable, and should only be determined if and when subsequent litigation arises. But it is entirely speculative at this juncture whether Defendants Bowman and Wallace will sue Defendant Keeton in a civil suit, and whether such suit will allege conduct that is not intentional, such that a defense would be implicated by the Policies. Such speculative arguments cannot allow for the imposition of an indefinite stay, particularly where, as here, that stay would ostensibly function as a procedural roadblock and prevent resolution of dispositive questions of fact. Here, Plaintiff merely seeks a judicial determination of whether it has a duty to defend Defendant Keeton under the facts alleged in its Complaint [#1], and such relief accords with the purpose of the Declaratory Judgment Act, 28 U.S.C. § 2201.

Due to the current absence of pending parallel litigation in state court, and because Defendant Keeton has failed to show why a stay is appropriate under the relevant factors, the Court denies Defendant Keeton's Motion [#43] to the extent it seeks a new stay.

## IV. Conclusion

Based upon the foregoing, and pursuant to the Court's discretion afforded under the Declaratory Judgment Act, 28 U.S.C. § 2201,

IT IS HEREBY **ORDERED** that Defendant Keeton's Renewed Motion to Dismiss or to Stay Declaratory Relief [#52] is **DENIED**.

- 15 -

Dated: December 20, 2021

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge